IN THE
TENTH COURT OF APPEALS


No. 10-08-00210-CV

IN THE INTEREST OF A.D.B. AND M. B., CHILDREN

From the 413th District Court
Johnson County, Texas
Trial Court No. D200606275

## MEMORANDUM  OPINION

The parental rights of Nichole Buntt were terminated as to her two children A.D.B. and M.B.  Because the evidence is both legally and factually sufficient to support the best interest finding, the trial court's judgment is affirmed.

### BACKGROUND

Nichole was not sufficiently involved in or committed to raising her two children.  For the three years prior to the removal of the children, Nichole allowed her aunt, Sheila French, to raise the children.  The authorities were concerned that French was involved in drug trafficking.  French later tested positive for methamphetamine use.  French's live-in boyfriend was sent to prison for exposing himself to one of French's children.  He exposed himself to one of Nichole's children as well.  Although one of Nichole's children was school aged, the child was not in school because Nichole

had not taken the proper steps to obtain a birth certificate from the child's birth state of Oklahoma.

In one issue, Nichole asserts that the evidence is legally and factually insufficient to support the judgment of termination. Specifically, she challenges the legal and factual sufficiency of the jury's finding that termination of her parental rights was in the best interest of her children.

### LEGAL AND FACTUAL SUFFICIENCY REVIEW

In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. . . . [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record,

the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

## BEST INTEREST

An extended number of factors have been considered by the courts in ascertaining the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976). The list is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent. *Id.*; *see In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2003). "[S]ome of the listed factors may be inapplicable to some cases, while other factors not listed may also be considered when appropriate." *In re S.A.P.*, 169 S.W.3d 685, 707 (Tex. App.—Waco 2005, no pet.); *see C.H.*, 89 S.W.3d at 27.

Testimony revealed that Nichole was not ready for her children to be placed with her. For example, testimony was presented that the children had severe behavioral problems. Although Nichole contends that these problems were brought about by placement in a foster home by the Texas Department of Protective and Regulatory Services, Nichole had no plans on how to deal with the behavioral issues and had not investigated how she would be able to pay for the children's recommended continued therapy or health care needs. She had not contacted any agency that might be able to help her with the children's health care needs. Despite recommendations that the

children continue with therapy, Nichole had no name of a therapist that she would send the children to if they were returned to her.

Additionally, although Nichole had a job, she only made about $700 a month. She thought about getting a second job at a donut shop but did not know what her hours there would be. Nichole believed that her grandparents could watch the children for a few hours a day; but she had not contacted any local day care facilities to determine whether the children could attend day care and did not know how much it would cost to place the children in day care.

Nichole relied heavily on her grandparents for her daily needs at the time of the trial. They provided her with a car for which she still owed them money. They provided her with a place to stay for which she paid a nominal rent. Although the Department recommended that the children remain in a stable environment, Nichole insisted on signing a contract with her grandparents that she would stay only 9 months with them. She had already lived with them for 3 months at the time of the trial and had not contacted any apartment complexes to learn how much an apartment would cost to rent. Nichole's grandparents were not in good health—her grandmother needed dialysis three times a week, and her grandfather had cancer but was in remission. Further, just two weeks before the trial, Nichole's grandmother had contact with Sheila French, the caregiver with whom Nichole had voluntarily left her children for three years and who had tested positive for methamphetamines.

Additionally, Nichole was on probation. She agreed that if she violated her probation, she could be sent to jail for two years. She admitted that she had not paid

her probation fees. Nichole had no specific plan for the children's care if she was sent back to jail. She generally stated that her family in Oklahoma might take the children.

## CONCLUSION

In reviewing the entire record under the appropriate standards, we find there is both legally and factually sufficient evidence to support the jury's finding that termination of Nichole's parental rights was in the best interest of the children. Nichole's sole issue is overruled.

Accordingly, the trial court's judgment is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed April 29, 2009
[CV06]